31 C.C.P.A. (Patents)

## HAMER v. WHITE et al.

### Patent Appeal No. 4894.

Court of Customs and Patent Appeals.
June 19, 1944.

988

P. E. Henninger, of Washington, D. C., (M. Davenport, of Los Angeles, Cal., of counsel), for appellant.

Harris, Kiech, Foster & Harris, of Los Angeles, Cal., for appellees.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This case comes before us for review by an appeal from the decision of the Board of Interference Examiners of the United States Patent Office (hereinafter referred to as the board) awarding priority to White and Graham (hereinafter usually referred to as appellee) as joint inventors of a valve structure stated to be for use principally upon slush pumps of large size handling the rotary mud which is employed in oil well drilling.

Three counts are involved, of which count 1 is typical. It reads:

"1. In a valve structure, the combination of: a valve seat having an annular face perpendicular to the axis of said structure, a first conical face flaring inwardly away from said annular face and a second inwardly flaring conical face connecting said annular face and said first conical face and forming a smaller angle with said axis than the first conical face; a valve body having a first conical face parallel to and in juxtaposition with said first conical face of said valve seat, a second conical face parallel to and in juxtaposition with said second conical face on said valve seat, and an annular face parallel to and substantially in the same plane as said annular face of said valve seat; and a sealing disc having an annular face contactually engaging said annular faces of both said valve seat and valve body respectively."

No detailed analysis of the counts is necessary to our decision. The particular feature here involved is referred to by the board and throughout the record and briefs as the "double angle feature." It is embodied in the structure defined in all the counts, although the term "double angle" is not used eo nomine in any one of the counts.

■ The interference was declared February 10, 1941, between a patent issued December 3, 1940, to Oil Well Manufacturing Corporation, assignee of White and Graham, on an application filed August 1, 1940, and an application of Hamer (hereinafter referred to as appellant) filed June 11, 1940. Appellant being the senior party, it was incumbent upon appellee to establish priority by a preponderance of the evidence. Appellee took the testimony of many witnesses and introduced in evidence a large number of documentary exhibits, together with some physical exhibits. Appellant elected to stand on his filing date and took no testimony.

The board did not name any specific dates in its award of priority to appellee, but held, upon the evidence presented, that appellee was "in possession of the invention in issue prior to Hamer's entry into the field."

There are only two general issues in the case, both of which are issues of fact.

The first is whether appellee established priority by a preponderance of the evidence.

The second is whether White and Graham were joint inventors.

To be somewhat more specific, the underlying question is whether the testimony taken on behalf of appellee is to be given credence. If it be credited, there can be no question of its establishing appellee's priority. The gravamen of appellant's contention, as expressed in different of his reasons of appeal, and argued in his brief and orally before us, is that appellee fabricated a story in the effort to prove priority.

To be still more specific, appellant claims, in substance, that the activities of appellee relative to the invention, which appellee's witnesses testify took place in the years 1938, 1939 and the early part of 1940, did not take place during that period but occurred after June 3, 1940, when a representative of appellee is alleged to have seen a valve made by appellant which is claimed by appellant to have embodied the double angle feature in question. No question of originality, however, is made an issue in the case.

In the reasons of appeal stated in the notice of appeal to us there are embraced assignments of error arranged in sixty-four separately numbered paragraphs. Appellant's brief before us covers 248 printed pages.

So far as we can discern from the decision of the board and the testimonial record before us, every detail of the evidence was discussed before that tribunal in much the same manner as it was discussed before us, and every material detail is reviewed with meticulous care in the board's decision which covers fifteen printed pages of the record.

It will be observed from the dates above given that the patent to appellee was issued December 3, 1940, substantially only four months after the filing of appellee's application. The expediting of consideration of appellee's application by the examiner is explained at the outset of the board's decision as follows:

"It appears from the White and Graham application file that the examination thereof was made 'special' because of the alleged infringing valve of the Hamer Oil Tools Co. as shown by Exhibit A which R. E. Gillespie, an employee of the Oil Well Manufacturing Co. averred he had seen at a well of the Superior Oil Co. on June 3, 1940. This becomes significant in view of the contentions of counsel for Hamer which will be discussed more fully hereinafter."

The board then stated the contention of the parties as follows:

"The position of the party White and Graham is that the present invention was brought about as the result of difficulties which were being experienced with valves' for the larger size pumps, especially by the Union Oil Co., in 1938; that as a result of these difficulties several solutions of the problem were discussed by White, Graham and others, and as a result of which, it was decided to test two sets of valves similar to their regular valves, one set of which were modified by using a brass plate under the regular rubber insert and the other set of which embodied the so-called double angle feature which is involved herein.

"It is contended that drawings, Exhibits 47 and 48, were made of the double angle feature early in January, 1939; that two test valves were made therefrom and installed in a pump of the Union Oil Co. along with two valves of the brass insert type in March, 1939; that the double angle valves remained on test until September, 1939; that they were satisfactory and that large numbers of valves embodying the double angle feature have been sold prior to June 3, 1940.

"It is the contention of the party Hamer that the need for the invention did not arise until 1939, as it was not until that time that Union Oil Co. began using "Red Devil" valves of the Oil Well Manufacturing Co. instead of 1938 as contended by White et al. It is also contended that the White and Graham record is so full of inconsistencies and contradictions that it is evident that the story is a complete fabrication and that the real facts are that all of the acts on the part of White and Graham in any way relating to the invention in issue occurred after June 3, 1940, when Gillespie saw the Hamer valve as set forth in his ex parte affidavit.

"It is not denied by Hamer that some kind of a test was started by the Oil Well Manufacturing Co. at the Union Oil Co. well in March, 1939, and completed in September, 1939, nor that some kind of valves were sold on the alleged dates; but it is vigorously denied that the record shows that such valves incorporated the double angle feature in issue. It is strenuously urged that White and Graham have put the double angle valve, which allegedly,

first came to their attention by seeing the Hamer valve on June 3, 1939 [1940], in the surroundings of the device, whatever it was that was tested in 1939, to thereby carry their dates of invention back of Hamer."

The board then proceeded to discuss the evidence, first saying:

"We have carefully examined the White and Graham record in the light of the contention that their story is a complete fabrication but fail to find sufficient basis to support the charge."

■ As has been indicated, we are of opinion, from the study we have made of the voluminous record in the light of appellant's extensive brief and his oral argument before us, that the board reviewed every material matter completely, fairly and correctly. The board's responsibility in the case was analogous to that of a judicial trial tribunal, and, as an appellate tribunal, we are not at liberty to reverse its findings of fact unless convinced that such findings were clearly against the weight of the evidence.

The decision of the board, of course, will be available to all who may care to read it after our decision shall have been published. Any written review of the evidence made by us could be little more than a. paraphrase of what the board said. Were we reversing the decision of the board it would be incumbent upon us to give a written review and point out the reasons for disagreement. Since we are affirming, no such review is necessary.

However, some general observations on our part are proper.

Appellee took the testimony of a large number of witnesses, many of whom had no interest whatsoever in the outcome of the case. Somewhat by way of summary the board pointed to the testimony (citing record page and question numbers) given by fifteen witnesses, each of whom testified, to use the phraseology of the board, "as to either having seen actual valves embodying the double angle feature, or having knowledge thereof, all in 1939." Such valves, of course, were the products of appellee, so far as the record shows, appellant making no claim to having one on display or in use earlier than June 3, 1940. We agree with the board's statement immediately. following the foregoing summary, reading:

"It is incredible that the large number of witnesses who have thus testified concern- ing the double angle valves would either be mistaken or willing to perjure themselves as to the date when they first knew of this development."

■■ The board recognized and stated in its decision "that there are inconsistencies, contradictions and unexplained incidents in the record of White and Graham," but very pertinently added, "this, however, is to be expected in any record; where all the witnesses tell exactly the same story it is a more suspicious circumstance than where there is some variation."

The board very carefully pointed out that certain of the testimony on behalf of appellee which, under the well-known rules of practice, required corroboration was not corroborated, and, therefore, was given no consideration. It also pointed out that certain statements in certain exhibits are in the nature of self-serving declarations, and held them entitled to no weight.

Appellant introduced no evidence attacking the character of the witnesses for appellee, nor any (we again quote from the decision of the board) "to establish that the testimony of any witness was false." He seeks to have the conclusion as to appellee's case being fabricated deduced solely from the inconsistencies, etc., to which the board referred, and no effort to impeach the witnesses aliunde was made.

So far as we can discern from our own careful examination of the record, it contains nothing which indicates that White or Graham or any other of those testifying are lacking in good character or integrity.

We are, therefore, unable to find any justification for holding that the board's finding to the effect that appellee's activities culminating in the invention took place prior to any date which appellant may claim is erroneous.

■ The second issue—that is, whether White and Graham were joint inventors— has been considered in the light of appellant's arguments concerning it.

The board considered it fully and stated, in part:

"In the application of White and Graham which matured into a patent, they swore that they were joint inventors and the application appears to be in due form. They also executed a preliminary statement claiming to be joint inventors and nothing appears of record inconsistent with this claim.

"It is well settled that an application in due form made by two or more persons claiming to be joint inventors, is prima facie evidence that they are such, and this cannot be overcome except by clear and unequivocal evidence (Hand et al. v. Van Berkel, 305 O.G. 420, 1922 C.D. 37; Clement v. McQuarrie et al., 51 App.D.C. 278 [278 F. 587], 298 O.G. 1081, 1922 C.D. 92; Brown v. Edeler et al., 27 C.C.P.A. 1091 [110 F.2d 858], (519 O.G. 222, 1940 C.D. 429.) Hamer has not sustained this burden, thus we hold that White and Graham were joint inventors."

We find no error in the board's holding on that issue.

The decision of the board is affirmed.

Affirmed.